IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

RAVEN HENDERSON,

        Plaintiff,

v.

MEMPHIS INVEST, LLC;
REI NATION, LLC; PREMIER REALITY
GROUP, LLC; PREMIER PROPERTY MANAGEMENT
GROUP, LLC; and KENT B. CLOTHIER, SR.,

        Defendants.

Case No. _____
JURY TRIAL DEMANDED

COMPLAINT UNDER THE FAIR LABOR STANDARDS ACT

COMES NOW Plaintiff Raven Henderson ("Plaintiff" or "Ms. Henderson") and files this Complaint under the Fair Labor Standards Act ("FLSA") against Defendants Memphis Invest, LLC; REI Nation, LLC; Premier Realty Group, LLC; Premier Property Management Group, LLC; and Kent B. Clothier, Sr. under the FLSA to recover unpaid overtime compensation.

**JURISDICTION**

1. This Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein under 28 U.S.C. § 1331, 29 U.S.C. § 201, et seq., and 29 U.S.C. § 216(b).

**PARTIES**

2. Plaintiff Ms. Henderson is an adult resident of Shelby County, Memphis, Tennessee. During the applicable statutory period, Plaintiff was "employed" by Defendants as a receptionist, a renewals coordinator, and a so-called "buyer's agent."

3. Defendant Memphis Invest, LLC ("Memphis Invest") is a Tennessee Limited Liability Company. Memphis Invest may be served with process at its principal place of business located at 1900 Exeter Road, Suite 210, Germantown, Tennessee 38138.

4. Defendant REI Nation, LLC ("Defendant REI") is a Tennessee Limited Liability Company. Defendant REI may be served with process at its principal place of business located at 1900 Exeter Road, Suite 210, Germantown, Tennessee 38138.

5. Defendant Premier Realty Group, LLC ("Defendant Premier Realty") is a Tennessee Limited Liability Company. Defendant Premier Realty may be served with process by service on its Registered Agent, Brett Clothier at Defendant Premier Realty's principal place of business located at 1900 Exeter Road, Suite 210, Germantown, Tennessee 38138.

6. Defendant Premier Property Management Group, LLC ("Defendant Premier Property Management") is a Tennessee Limited Liability Company. Defendant Premier Property Management may be served with process upon its Registered Agent, Brett Clothier at Defendant Premier Property Management's principal place of business located at 1900 Exeter Road, Suite 210, Germantown, Tennessee 38138.

7. Defendant Kent Clothier, Sr. ("Defendant Clothier") is the owner and CEO of Defendant Memphis Invest, Defendant REI Nation, Defendant Premier Realty and Defendant Premier Property Management, as well as numerous other affiliated companies. Defendant Clothier may be served with process at 1900 Exeter Road, Suite 210, Germantown, Tennessee 38138.

**FACTS**

8. At some or all times relevant, Defendants were an "employer" of the Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

9. Defendants, at all times hereinafter mentioned, engaged in related activities performed through unified operations or common control for a common business purpose, and are and at all times hereinafter mentioned, are an enterprise within the meaning of 29 U.S.C. § 203(d). Specifically, all corporate Defendants are under common control by the same groups of owners, all conducted business under common names or identities and with the same function, shared employees and goods, and followed the same policies and procedures.

10. At all times hereinafter mentioned, the Defendants were enterprises engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A) in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods, services or materials that have been moved in or produced for commerce by any person and in that said enterprise had an annual gross volume of sales made or business done of not less than $500,000. Specifically, the Corporate Defendants are engaged in the business of acquiring, renovating, selling and managing real estate and have annual sales separately and collectively of not less than $500,000. The Corporate Defendants are engaged in this business in states beyond Tennessee, such as Texas, and thus are engaged in interstate commerce.

11. Defendant Clothier is the owner and CEO and member of the Corporate Defendants and at all times herein, Defendant Clothier has been the employer of Plaintiff under the meaning of 29 U.S.C. § 203(d) because he has acted directly in the interest of the Corporate Defendants in relation to establishing the terms and compensation of Plaintiff's employment, including, but not limited to, making the decision not to compensate Plaintiff at the required overtime wage rates. Defendant Clothier is believed to be a resident of Shelby County, Tennessee.

12. The FLSA requires covered employers, such as Defendants, to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours per week. During the applicable statutory period, Defendants suffered and permitted Plaintiff to routinely work more than forty (40) hours per week without overtime compensation.

13. During the applicable statutory period, Defendants suffered and permitted Plaintiff to perform work prior to the start time of her respective scheduled work hours, as well as during her lunch period, and during periods of time after the end of her scheduled work hours, for which she was not compensated for such "off-the-clock" time at the applicable FLSA overtime rates of pay.

14. On May 9, 2018, Defendants hired Plaintiff to work as a receptionist for Defendant Premier Property Management. Plaintiff was paid on an hourly basis and was required to perform "off-the-clock" work.

15. In November 2018, Plaintiff obtained her real estate license. Her broker was Ryan Flannery a manager of Defendant Premier Realty. Although Plaintiff became a licensed real estate agent, she was never paid any real estate commissions throughout her employment with Defendants.

16. In February 2019, Defendants changed Plaintiff's job duties from receptionist to performing property management lease renewals where she was responsible to renew leases for Defendant Premier Property Management's rental properties. Plaintiff was paid on an hourly basis and was required to perform "off-the-clock" work.

17. In August 2019, Defendants again changed Plaintiff's job duties from property management lease renewals to "buyer's agent" where she was responsible for locating properties

for Defendants to consider purchasing. Her employer supposedly changed from Defendant Premier Property Management to Memphis Invest.

18. At the time Plaintiff's job title was changed to a "buyer's agent," Defendant Memphis Invest unlawfully changed her classification to independent contractor, rather than classification as an employee of Defendants. Defendants then began paying Plaintiff on a piece meal basis of $850 for each property which Defendant purchased based on a recommendation from Plaintiff. Defendants did not pay Plaintiff any pay or hourly wage for any properties which she found and recommended for purchase if Defendants decided not to purchase said property or if the close of the property did not take place.

19. During the applicable statutory period, Defendants compensated Plaintiff at a rate of $14.00 at the beginning of her employment as a receptionist. Her hourly rate was changed to $19.00 per hour while she was employed as a receptionist/renewal coordinator. As stated above, it then changed to a "piece meal" of $850 for each property purchased by Defendants, when Plaintiff was unlawfully misclassified as an independent contractor.

20. Although her job title was "buyer's agent," Plaintiff was instructed to check "Buyer is Unrepresented" on closing documents for any properties Defendants purchased at her recommendation. Thus, even though Plaintiff was a licensed real estate agent, she was not paid a commission on any real estate transactions while employed as a "buyer's agent."

21. Plaintiff was required to be at Defendants' office every day beginning at 8:00 a.m. until the close of business at 5:00 p.m. or later. Plaintiff worked through her lunch. Plaintiff was also required to perform work from home and/or outside of the office prior to 8:00 a.m. and after 5:00 p.m. Defendants knew, should have known, and required that Plaintiff work "off-the-clock."

22. Plaintiff estimates that she worked at least 55 hours or more per week, in each work week when she was classified as an "employee" and when she was misclassified as an independent contractor.

23. During the time she worked as an "employee" for Defendants, she was required to clock out during her lunch even if she worked during that period. She was also required to clock out at 5:00 p.m. even though Defendants required that she continue to work thereafter. Defendants knew and required that Plaintiff work "off-the-clock."

24. After Plaintiff was unlawfully misclassified as an independent contractor, Plaintiff was not paid at all for her time worked, but was instead paid on a piece meal basis. Plaintiff was not paid overtime for periods that she was misclassified as an independent contractor.

25. During all times material, Plaintiff performed work duties (within weekly pay periods) for Defendants prior to the start time of her scheduled shift as well as after the end time of her scheduled shift for which she was not compensated for "off-the-clock" time at the applicable FLSA straight and overtime rates of pay.

26. At all times relevant to this action, Plaintiff has been subjected to Defendants' common timekeeping, payroll and operational policies, practices and plans.

27. At all times relevant to this action, Defendants totally controlled the work of Plaintiff, and as a matter of economic reliability Plaintiff was completely reliant upon Defendants to earn a living, and Plaintiff was neither self-reliant nor independent.

28. Defendants total activities concerning the situation establish that Plaintiff was not properly characterized or classified as an independent contractor. For example: (a) Defendants forced Plaintiff to sign a contract containing a covenant not to compete wherein Plaintiff is identified as an "employee"; (b) Defendants sued Plaintiff to enforce the covenant not to compete

wherein Defendants pled that Plaintiff was at all times an "employee" of Defendants; (c) the services rendered by Plaintiff were an integral part of Defendants' business(es); (d) the relationship between Plaintiff and Defendants was exclusive and of an ongoing nature; (e) Plaintiff made no investment in any facilities or equipment relating to Defendants' business or Plaintiff's employment; (f) Plaintiff allegedly was prohibited from working for any other principal both during her employment and for a one (1) year period thereafter; (g) Defendants set the terms of Plaintiff's compensation leaving Plaintiff with no discretion to control her own profits and losses; (h) Plaintiff had no independent business organization or operation; and (i) Plaintiff had no initiative, judgment or foresight in open market competition with other principals since her relationship with Defendants was required to be sole and exclusive.

29. At all times material, Defendants had knowledge of Plaintiff's aforementioned "off-the clock" compensable time.

30. Defendant failed to accurately record all work compensable hours and time performed by Plaintiff as required by the FLSA, 29 C.F.R. § 516.2(a)(7).

31. Defendants knew, and were aware at all relevant times, that they were not recording all of the work hours and compensable time of Plaintiff, without a good faith basis for such failure.

32. Defendants' common policies, practices, and plans of not compensating Plaintiff for all "off-the-clock" time at the applicable straight and overtime rates of pay was a willful violation of the provisions of the FLSA, 29 U.S.C. § 207(a)(1).

33. The net effect of Defendants' common policy, practice, and plan of unlawfully misclassifying Plaintiff as an independent contractor and not compensating Plaintiff for all "off-the-clock" time, including all related overtime, was a scheme to save payroll costs and payroll

7

taxes, for which it has unjustly enriched itself and enjoyed ill-gained profits at the expense of Plaintiff.

34. As a result of Defendants' bad faith and willful failure to pay Plaintiff in compliance with the requirements of the FLSA, Plaintiff has suffered lost wages in terms of unpaid overtime compensation as well as other damages.

35. As a result of Defendants' actions and conduct described in the foregoing paragraphs, Defendants have violated provisions of the FLSA, 29 U.S.C. §§ 201 *et seq.*, specifically § 207(a)(1).

36. The exact amounts of unpaid overtime compensation owed to Plaintiff is not presently known but will be determined through discovery. At this point, Plaintiff estimates that she was deprived of overtime compensation during the applicable statutory period of approximately $50,000.

37. Further, by failing to accurately record, report and/or preserve records of hours worked by Plaintiff, Defendants have failed to make, keep, and preserve records with respect to Plaintiff sufficient to determine her wages, hours and other conditions and practices of employment, in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*

38. The foregoing conduct on the part of Defendants constitutes a willful violation of the FLSA inasmuch as Defendants knew or showed reckless disregard for the fact that their classification and compensation practices were in violation of federal law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:

1. Judgment against Defendants for an amount equal to unpaid back wages at the applicable overtime rates in an amount believed to be in excess of $50,000;

    2.       Judgment against Defendants that their violations of the FLSA were willful;

    3.       An equal amount to the overtime damages as liquidated damages per the FLSA 29 U.S.C. § 216(b);

    4.       All recoverable costs, expenses, and attorneys' fees incurred in prosecuting these claims per the FLSA 29 U.SC. § 216(b);

    5.       An order requiring Defendants to preserve all electronically stored information relevant to this lawsuit; and,

    6.       For all such further relief as the Court deems just and equitable.

                                            Respectfully submitted:

                                            /s/JAMES M. SIMPSON
                                            JAMES M. SIMPSON, BPR 15023
                                            ALLEN, SUMMERS, SIMPSON, LILLIE
                                            & GRESHAM, PLLC
                                            80 Monroe Avenue, Suite 650
                                            Memphis, Tennessee 38103
                                            Telephone:  901-763-4200
                                            Facsimile:  901-684-1768
                                            jsimpson@allensummers.com